UNITED STATES of America,

v.

Kevin DAVIS, et al., Defendant.

Criminal Action Nos. 02–106–1, 02–106–2, 02–106–3.

United States District Court,
E.D. Pennsylvania.

Nov. 26, 2002.

Joseph C. Santaguida, Philadelphia, PA, for Kevin Davis.

Robert E. Welsh, Jr., Welsh & Recker, Philadelphia, PA, for Reginal Scott.

Stephen H. Serota, Philadelphia, PA, for Kevin A. Minnis.

Curtis R. Douglas, U.S. Attorney's Office, Philadelphia, PA, for U.S.

### MEMORANDUM AND ORDER

KATZ, Senior District Judge.

On September 13, 2002, a jury found defendants Kevin Davis, Reginal Scott, and Kevin Minnis each guilty of drug and gun violations. Now before the court is defendants' motion for judgment of acquittal pursuant to Rule 29(c), or in the alternative for a new trial pursuant to Rule 33. For the reasons set forth below, the defendants' motion is denied.

### I. Background

On the night of September 21, 2001, Philadelphia police officers arrested defendants Kevin Davis, Reginal Scott, and Kevin Minnis following a high speed car chase.[1] On July 17, 2002, a federal grand jury returned a superseding indictment charging the defendants each with one count of possession with intent to distribute cocaine base or "crack" in violation of 21 U.S.C. § 841, and one count of carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). The grand jury also charged defendant Kevin Minnis with possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). At trial, the government argued that the defendants were traveling in a black Honda with two other individuals when shots were fired from their automobile. Philadelphia Police Officer Caprara testified that she observed shots fired from the passenger side of the black Honda on the corner of 17th and Annin Streets and pursued the Honda in an unmarked police vehicle. After marked police cars joined the pursuit, the Honda stopped in the 2200 block of Moore Street. Officer Brook testified that he observed Reginal Scott and Kevin Davis exit the Honda. Kevin Davis attempted to flee on foot and Officer Brook pursued the defendant, fired his gun, and struck the defendant in the leg. The police recovered a Hi Point .380 caliber pistol from the area where Davis fell, along with nineteen packets of cocaine base or crack and $116.00 from the Davis' clothes. Officer Caprara

---

1. In addition to the three defendants, the police arrested two other individuals in the automobile. However, the government did not charge these two individuals in the indictment.

testified that she observed defendant Reginal Scott near the Honda toss a firearm from his waistband. The police recovered this weapon, a Browning Arms .380 caliber pistol loaded with eight live rounds, and ballistics reports indicated that the weapon was fired at 17th and Annin Streets. The police also recovered from defendant Scott forty-two pink tinted packets filled with cocaine base or crack, and two green tinted packets containing cocaine base or crack. Officer Bucceroni testified that he arrested defendant Kevin Minnis attempting to exit the Honda with a firearm. The police recovered from defendant Minnis a Heckler & Koch USP 9mm semi-automatic pistol with laser sights, one magazine loaded with eleven live rounds of ammunition, as well as twelve packets containing cocaine base or crack.

In order to show that the defendants' behavior was consistent with that of drug traffickers in the Philadelphia area, the government offered the testimony of Philadelphia Police Officer Derrick Garner. Officer Garner, a fourteen year veteran of the Philadelphia Police Department, testified that he had worked for twelve years in the narcotics division and was involved in over 2,500 arrests, two-thirds of which were for drug trafficking crimes. After the court qualified Garner as an expert, Garner testified that in his opinion the defendants' behavior was consistent with the modus operandi of South Philadelphia drug traffickers. According to Garner, he based this opinion on the lack of drug paraphernalia, the presence of guns, and the number of people in the car. Noting that South Philadelphia drug dealers provide delivery services, Garner also testified that in his opinion drug users do not carry weapons and do not travel in groups for protection. In contrast, the defense expert David Leff testified that in his opinion the number of packets and lack of equipment used by dealers indicated that the defendants merely possessed the drugs for personal use. After three days of testimony, the jury returned guilty verdicts on all counts.

## II. Discussion

### A. Judgment of Acquittal

■ Federal Rule of Criminal Procedure 29(c) provides that a defendant may, within 7 days after the verdict, or longer if the court prescribes, file a motion for judgment of acquittal. When deciding a motion for judgment of acquittal under Fed. R.Crim.P. 29(c), a trial court must view the evidence "in the light most favorable to the prosecution and ... draw all reasonable inferences therefrom in the government's favor." *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir.), *cert. denied*, 469 U.S. 858, 105 S.Ct. 189, 83 L.Ed.2d 122 (1984). Because the defendants challenge the sufficiency of the evidence, this court "must independently re-examine the record and determine as a matter of law whether the evidence could support an inference of guilt beyond a reasonable doubt." *Id.* However, this court's duty is "limited to determining whether the conclusion chosen by the factfinders was permissible." *Id.* "A verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir.1987) (citations omitted). As the Third Circuit has noted, "[a] defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir.1992).

Defendants argue that they are entitled to judgment of acquittal pursuant to Criminal Rule of Procedure 29(c) because there was no evidence at trial that Mr. Davis, Mr. Scott, or Mr. Minnis intended to distribute or sell the drugs. Even though the defendants concede that the evidence at

trial "permits the inference" that each defendant possessed a firearm as well as "differently packaged packets of crack cocaine," the defendants contend that this evidence falls short of proving intent.[2] *See* Defs.' Mot. for J. of Acquittal, at 5. Specifically, defendants point to the lack of drug paraphernalia commonly used by dealers, the lack of sales records, and the small quantity of drugs. *Id.* Furthermore, the defendants assert that the government failed to prove that the defendants carried the firearms "in relation to" the drug offenses. The government responds that the number of guns recovered from the defendants, the number of people in the vehicle, the packaging of the drugs, and the circumstances of the arrest support the convictions.

This court finds that the evidence supports an inference of guilt beyond a reasonable doubt. Viewing the evidence in the light most favorable to the government, the Philadelphia police arrested the defendants following a shooting and a high speed car chase. All three defendant's carried guns and small packets of drugs, and the police found over $100 in defendant Kevin Davis' clothes. According to the government expert, South Philadelphia drug traffickers frequently travel in groups for protection and carry weapons. A jury may reasonably conclude that "an armed possessor of drugs has something more in mind than mere personal use." *United States v. Cannon,* 472 F.2d 144, 145 (9th Cir.1972). *See also United States v. Martinez,* 54 F.3d 1040, 1043–44 (2d Cir.1995) (finding that, in the context of the case, possession of a loaded firearm

"by itself provided strong evidence of [the defendant's] intent to distribute."); *United States v. Garrett,* 903 F.2d 1105, 1113 (7th Cir.1990) ("Intent to distribute has been inferred in cases where small amounts of drugs have been packaged in a manner consistent with distribution or have been possessed in conjunction with other indicia of drug distribution, such as a weapon."). Therefore, this court finds sufficient evidence for the jury's verdict.

### B.  New Trial

■ Federal Rule of Criminal Procedure 33 provides that "[o]n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require." The decision whether to grant a motion for a new trial is within the sound discretion of the trial court. *See United States v. Console,* 13 F.3d 641, 665 (3d Cir.1993). A new trial is warranted if trial errors had a substantial influence on the jury's verdict. *See Government of the Virgin Islands v. Bedford,* 671 F.2d 758, 762 (3d Cir.1982). When evaluating a Rule 33 motion, the trial court need not view the evidence in the light most favorable to the government but instead must exercise its own judgment in evaluating the case. *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir.2002).

In support of their motion for a new trial, defendants argue that the court erred in admitting the testimony of Officer Garner. Specifically, defendants assert that the government failed to provide adequate discovery of Officer Garner's testimony, and that this testimony violated the

---

**2.** In order to show a violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance, the government must prove beyond a reasonable doubt: 1) that the defendant possessed a detectible amount of a controlled substance; 2) that the defendant did so knowingly and intentionally; and that the defendant intended to manufac-

ture, distribute, or dispense the controlled substance. 2 Devitt & Blackmar, § 54.07. The elements for a violation of 18 U.S.C. § 924(c)(1)(A) are: 1) that the defendant knowingly carried a firearm; and 2) that the defendant did so during and in relation to the drug trafficking offense charged in the indictment. 2 Devitt & Blackmar § 36.18.

tenets of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In addition, defendants contend that the court erred in denying defendant Reginal Scott's motion for a mistrial following Officer Brook's testimony. The court will address these arguments *seriatim.*

### 1. Inadequate discovery

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides:

> At the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief. If the government requests reciprocal discovery under subdivision (b)(1)(C)(ii) of this rule and the defendant complies, the government shall, at the defendant's request, disclose to the defendant a written summary of testimony the government intends to use under Rules 702, 703, or 705 as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications.

On June 20, 2002, defense counsel for Reginal Scott requested a written summary of the government's expert witness testimony "including the opinions of witnesses, the bases and reasons therefore, and the witnesses' qualifications." Defs.' Mot. for J. of Acquittal, ex. A, ¶ 10. On June 27, 2002, the government in its first pretrial memorandum summarized its expert testimony as follows:

> A "drug trafficking expert" from the Philadelphia Police Department will testify that the materials in the packets submitted for testing and taken from the defendants is "crack" cocaine. He/she will also testify that in South Philadel-

phia, drug traffickers ride in cars together and when they are paged by customers the dealers go to a location to transact drug deals with the customers who paged them. He/she will testify that the defendants traveling in a car, each with drug packets and each with a gun is consistent with possession with the intent to distribute as opposed to simple possession.

*See* Gov't Trial Mem. at 4. Defendants assert that this disclosure inadequately summarized Officer Garner's testimony. According to the defendants, the government requested reciprocal discovery under Rule 16(b)(1)(C)(ii) in a letter dated June 24, 2002, yet failed to describe the bases and reasons for Officer Garner's opinions as required by Rule 16(a)(1)(E).

In *United States v. Lopez*, the Third Circuit found that the government's failure to provide a written summary of a fingerprint expert's qualifications and list the bases and the reasons for the expert's opinion did not warrant a new trial. 271 F.3d 472 (3d Cir.2001). In *Lopez*, the government failed to disclose the witness' resume to the defense until trial and merely provided a brief summary of the expert's report. The Third Circuit assumed, without deciding, that the government violated the requirements of Rule 16(a). *Lopez*, 271 F.3d at 482. The *Lopez* court then turned to Rule 16(d)(2) which states that once a trial court is aware of a party's failure to adequately provide discovery, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Fed.R.Crim.P. 16(d)(2). Noting that "the Rule [did] not require a district court to do anything," *Lopez*, 271 F.3d at 483, the Third Circuit held that a new trial was warranted only if the district court's action or inaction re-

sulted in prejudice to the defendant. *Id.* at 484. Because the defendant had failed to show prejudice, the court declined "to grant the defendant the extreme remedy of a new trial." *Id.*

Assuming *arguendo* that the government inadequately disclosed the bases and reasons for Officer Garner's testimony, this violation of Rule 16(a) did not prejudice the defendants. In its pretrial memorandum, the government summarized Officer Garner's testimony and noted that the witness would testify regarding the behavior of South Philadelphia drug traffickers. Specifically, the June 27, 2002, pretrial memorandum stated that the expert would discuss that the defendants traveled together in a car, that each possessed packets of drugs, and that each carried a gun. The government's disclosure, while brief, informed the defendants of the basic content of its expert's testimony, and the defendants responded accordingly. Following the government's case-in-chief, defense expert David Leff testified that, in his opinion, the defendants' behavior was consistent with that of other drug users who possess drugs were for personal use rather than for distribution. Under *Lopez*, defendants are required to show prejudice as a result of inadequate disclosure. Because the defendants have failed to establish prejudice, this court declines to grant a new trial on the basis of inadequate discovery.

### 2. Daubert Challenge

■ The defendants next argue that the court erred in admitting Officer Garner's testimony because there was no basis for the opinion that the defendants' behavior was consistent with the behavior of other South Philadelphia drug dealers. The Federal Rules of Evidence permit expert opinion testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue...." Fed.R.Evid. 702; *see also* Fed.R.Evid. 703 (stating that

bases of such opinion testimony should be facts "of a type reasonably relied upon by experts in the particular field in forming opinions"). Under the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the trial court is to act as a gatekeeper for scientific expert evidence and evaluate whether an expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597, 113 S.Ct. 2786. In order to assess expert testimony, the Supreme Court advised the trial court to look to whether the technique in question has been tested, whether it has been subjected to peer review and publication, the potential rate of error, and the general acceptance of the technique. *See Daubert*, 509 U.S. at 592–94, 113 S.Ct. 2786. In addition to these factors, the Third Circuit has considered four additional factors in evaluating testimony: 1) "the existence and maintenance of standards controlling the technique's operation;" 2) "the relationship of the technique to methods which have been established to be reliable;" 3) "the qualifications of the expert witness testifying based on the methodology;" and 4) "the non-judicial uses to which the method has been put." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir.2000) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n. 8 (3d Cir.1994)). While these factors may assist a trial court in evaluating the reliability and relevancy of an expert's testimony, the Supreme Court has noted that this inquiry is a "flexible one" with a "focus ... solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786.

In *Kumho Tire Co. v. Carmichael*, the Supreme Court expanded *Daubert's* holding to apply to expert testimony based on "technical or other specialized knowledge." 526 U.S. 137, 141, 119 S.Ct. 1167, 143

L.Ed.2d 238 (1999). When evaluating non-scientific expert testimony, the Supreme Court concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Id.* (emphasis in original). Emphasizing that the *Daubert* inquiry is a flexible one, the Court noted that "there are many different kinds of experts, and many different kinds of expertise." *Id.* at 150, 119 S.Ct. 1167. Because the test of reliability is so flexible, "*Daubert's* list of specific factor neither *necessarily* nor *exclusively* applies to all experts or in every case." *Id.* at 141, 119 S.Ct. 1167 (emphasis added). In evaluating non-scientific expert testimony, "a trial court should consider specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 152, 119 S.Ct. 1167.

Defendants in the present case argue that Officer Garner's testimony is unreliable and fails the *Daubert* analysis. According to the defendants, "[t]here was absolutely no pretense of a scientific method, scientific testing, peer review in publication, a known or potential rate of error, and the extent to which [Officer Garner's] "theory" is generally accepted." Defs.' Mot. for J. of Acquittal, at 12. As noted by the Supreme Court, the *Daubert* factors are merely to assist the trial court in determining the reliability of expert testimony. In the present case, Officer Garner is a fourteen year veteran of the Philadelphia police force with twelve years of experience in the narcotics division. Officer Garner testified that, in his experience, South Philadelphia drug traffickers carry weapons, travel in groups, and operate delivery services in order to distribute controlled substances. This testimony concerned the methods of operation for drug traffickers in the South Philadelphia area-information not within the common knowledge of the average juror. "In cases involving narcotics trafficking, courts have admitted a broad range of expert testimony concerning the "modus operandi" of the drug trade." *United States v. McGlory,* 968 F.2d 309, 345 (3d Cir.1992). Furthermore, the defendants offered testimony from their own expert concerning the habits of drug users and drug traffickers in Philadelphia. Given Officer Garner's extensive experience in the practices of the drug trade, there was no error in allowing his testimony. This court finds that Officer Garner's testimony was both reliable and relevant and did not violate Rule 702.

### 3. State of Mind Testimony

█ In addition to *Daubert's* and *Kumho Tire's* restraints on expert testimony, Federal Rule of Evidence 704(b) further limits the content of an expert's testimony. Under Rule 704(b), an expert witness may not testify, state an opinion, or infer that a defendant "did or did not have the mental state or condition constituting and element of the crime charged or of a defense thereto." Fed.R.Evid. 704(b). In evaluating the fine line between permissible and impermissible testimony under Rule 704(b), the Third Circuit has reasoned that "[e]xpert testimony is admissible if it merely 'support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.'" *United States v. Watson,* 260 F.3d 301, 308 (3d Cir.2001) (quoting *United States v. Bennett,* 161 F.3d 171, 183 (3d Cir.1998)). "It is only as to the last step of the inferential process-a conclusion as to the defendant's mental state-that Rule 704(b) commands the expert to remain silent." *Id.* at 309 (quoting *United States v. Dunn,* 846 F.2d 761, 762 (D.C.Cir.1988)).

In *United States v. Watson*, the Third Circuit reversed a conviction because the government experts improperly testified that the defendant had the intent to distribute illegal drugs. 260 F.3d 301 (3d Cir.2001). The Third Circuit explained that experts may properly testify regarding the "significance of certain conduct or methods of operation to the drug distribution business . . ." because narcotics operations are "not within the common knowledge of the average juror." *Id.* at 307. In *Watson*, however, the Third Circuit found that the prosecutor's questions repeatedly elicited testimony that violated Rule 704(b). In *Watson*, the defendant objected to the following questions and testimony:

> Government: Now, based on your experience and training of purchasing drugs and working as a Narcotics Investigator, have you formed an opinion, as to whether or not the substance contained in Government Exhibit 1 was possess [sic] with the intent to distribute, transfer or deliver or the intent to personally use that drug? . . . Expert # 1: I believe it was possess [sic] with the intent to distribute to somebody else.
>
> . . .
>
> Government: Now . . . have you formed an opinion, as to whether or not the substance contained in Government Exhibit 1 was possessed with the intent to distribute, transfer or deliver versus the intent to personally consume that substance?
>
> . . .
>
> Expert # 2: Yes, sir. Based on my experience, through my undercover investigations, I've seen, on numerous occasions, subjects that have amounts of crack cocaine like this, as well as these packaging bags, which they were cutting off and packaging in these bags for resale, which I've also purchased. And that would be consistent with someone who is selling cocaine versus someone

> who would be using it for their personal use.
>
> . . .
>
> Government: With respect to the particular trip taken here, by Bruce Watson, have you formed an opinion as to whether or not that particular trip was taken for the purpose of distribution, transfer and delivery of drugs, as opposed to procurement of drugs for personal use?
>
> . . .
>
> Expert # 3: Generally, a trip of a short nature like that, a 10 plus hour trip to Philadelphia, spending four hours there, on my experience, has been that they've gone into the city to purchase drugs to, ultimately, take back and resell at their starting point.

*Watson*, 260 F.3d at 305–06. In finding that this testimony violated Rule 704(b), the Third Circuit held that the government witnesses crossed the line when they responded to the prosecutor's "repeated references to [the defendant's] intent" with testimony concluding that the defendant possessed the drugs with the intent to distribute. *Id.* at 309. According to the Third Circuit, the government may not circumvent the rule by repeatedly referring to the defendant's intent in a question. Because the government prosecutor repeatedly referred to Watson's mental state in his questions, the Third Circuit found that the government expert's response of "yes, sir" violated Rule 704(b). *Id.* In evaluating the final expert's testimony, the Third Circuit held that government's question was designed to elicit testimony regarding Watson's intent and, in response, the expert impermissibly implied that the purpose of the defendant's trip was to distribute drugs.

Defendants contend that Officer Garner's testimony violated Federal Rule of Evidence 704(b) for the same reasons. Here, Officer Garner testified that in his

experience South Philadelphia drug traffickers frequently travel in groups, carrying guns, and offer a delivery service for their customers. In addition to this testimony involving the modus operandi of drug dealers, Officer Garner also testified that the behavior of the defendants was consistent with intent to distribute:

> Question: Officer Garner, I'll give you a hypothetical. Officer Garner if you were to hear testimony that there were five persons in a car, four of whom possessed handguns and one person possessed a handgun with 12 packets, another person possessed a handgun with 19 packets, there's one person that possessed a handgun with 44 packets ... Officer Garner, would you say that would be consistent with drug trafficking or consistent with possession, simple possession?
>
> Answer: It would be my opinion that would be possession with the intent to deliver narcotics.

Tr. at 153–55, Sept. 11, 2002. The government responds that Officer Garner merely offered an opinion about the circumstances of the defendants' possession but not the individual defendant's mens rea. According to the government, this testimony supports the inference that the defendant's possessed the narcotics with the intent to distribute but does not draw the ultimate conclusion for the jury.

Although similar to the objectionable testimony in *Watson*, Officer Garner's testimony is distinguishable. In *Watson*, the government specifically asked the experts to testify regarding the individual defendant's state of mind. Because of the form of the government's questions in *Watson*, the experts' responses included references to the particular defendant's intent. In this case, Officer Garner responded to hypothetical questions rather than a specific questions regarding the intent of the individual defendants on trial. While the

facts of the hypothetical resembled the circumstances of this particular case, the government did not repeatedly refer to the individual defendant's state of mind when questioning the government expert. Officer Garner's testimony involved the general behavior of drug traffickers in the South Philadelphia area. This court finds that Officer Garner's testimony did not violate Rule 704(b) in that it did not "draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion [did] not necessarily follow from the testimony." *United States v. Bennett*, 161 F.3d 171, 183 (3d Cir.1998).

### 4. Officer Brook Testimony and Denial of Mistrial Motion

■ The defendants argue that the court erred in denying defendant Reginal Scott's motion for a mistrial following the testimony of Officer Gilbert Brook. At trial, defense counsel for Reginal Scott asked Officer Brook if he knew the defendant from the neighborhood. Officer Brook responded, "Point Breeze and Morton, yes, I had dealings with him, by Officers Tacko and Tolliver, he fired a gun-I chased, I was the responding officer." After counsel objected as non-responsive, this court overruled the objection and the testimony continued:

> Question: Now are you also familiar with him, from seeing him hang around 13th and Capitol?
>
> Answer: Certainly.
>
> Question: You have from time to time with the other officers asked him to disperse?
>
> Answer: Yes.
>
> Question: Repeatedly he was told not to hang around there, officer tell him and his friends to go home?
>
> Answer: Dispersal off the corner. When there are disorderly crowds, it is a known drug location, we get numerous

complaints in the area for several different locations in the area. Tr. at 29–30, Sept. 11, 2002. Scott's defense counsel again objected to Officer Brook's answer as non-responsive, and the court overruled the objection. Following Officer Brook's testimony, the defense moved for a mistrial arguing that Officer Brook's testimony was non-responsive and prejudicial. After denying the motion, the court gave a curative instruction that the jury should disregard "other things, collateral matters, marginal things, that have nothing to do with this case." Transcript at pg 47. According to the defendants, Officer Brook's testimony that the police suspected defendant Scott of using a gun and drug trafficking was "mortally and unfairly prejudicial to him." Defs.' Mot. Mot. for J. of Acquittal, at 12.

When evaluating whether a prosecution witness made prejudicial remarks, a court must examine "(1) whether [the witness'] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury, (2) the strength of the other evidence, and (3) curative action take by the court." *United States v. Xavier*, 2 F.3d 1281, 1285 (3d Cir.1993). This court finds that the witness' remarks were neither pronounced nor persistent in that Officer Brook merely responded to two questions posed by defense counsel. Officer Brook's testimony was, as the court found at trial, conscientious, conservative, and by no means malicious. The evidence against defendant Reginal Scott was strong,[3] and the court's contemporaneous cautioning instructed cured any prejudice.

#### 5. Interests of Justice

Defendants argue that a new trial should be granted in the interests of jus-

tice. Defendants contend that the police testimony was unsupported by contemporaneous radio broadcasts, there is no evidence of intent to distribute, and there is evidence that defendant Reginal Scott was not in the black Honda at the time of the high speed chase. "A district court may order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir.2002) (citations, punctuation omitted). In this case, the interests of justice are served by the jury's resolution of the factual disputes at trial.

### III. Conclusion

For the foregoing reasons, the defendants' motion is denied.

---

**3.** At trial, Officer Bucceroni testified that defendant Scott get out of the vehicle involved in the high speed chase; Office Caprara testified that defendant Scott tossed a handgun from his waistband; and Officer Dawsonia testified that she recovered 44 packets of crack cocaine from defendant Scott in a search incident to an arrest.