**UNITED STATES**

**v.**

**Cobie RICH Defendant**

**No. 03–CR–86.**

United States District Court,
E.D. Pennsylvania.

July 21, 2004.

Cobie Rich, Phila, PA, pro se.

Nialena Caravasos, Philadelphia, PA, for Defendant.

Patrick Askin, Andrea B. Grace, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

On February 5, 2004, following a jury trial, Cobie Rich was found guilty of the following three counts: possession with the intent to distribute cocaine and cocaine base ("crack") on October 8, 2002 (Count 1); possession with the intent to distribute cocaine and crack on December 17, 2001 (Count 2); and possession with the intent to distribute crack on October 11, 2001 (Count 3). Rich was acquitted of the following charges: possession of a firearm in furtherance of a drug trafficking crime and felon in possession of a firearm. Rich has filed a motion for a judgment of acquittal or new trial pursuant to Federal Rules of Criminal Procedure 29 and 33.[1]

---

1. Rich first filed a motion for judgment of acquittal or new trial on February 10, 2004. Rich filed an amended motion on March 11, 2004. Although Rich does not cite Federal Rule of Criminal Procedure 33 as a ground for relief, because he seeks either a judgment

## I. Standard of Review

 Federal Rule of Criminal Procedure 29(c)(1) provides, in pertinent part, that after a jury verdict, "a defendant may move for a judgment of acquittal." Fed. R.Crim.P. 29(c)(1). In ruling on a motion for judgment of acquittal based on insufficiency of the evidence pursuant to Rule 29, a trial court must view the evidence "in the light most favorable to the prosecution . . . and [ ] draw all reasonable inferences therefrom in the government's favor." *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir.1984). The trial court is obliged to uphold the jury's verdict unless, viewing the evidence in this fashion, no rational jury could have found the defendant guilty beyond a reasonable doubt. *Id.* Furthermore, the district court must "presume that the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences" such that "a verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir.1987). This court, therefore, "must independently re-examine the record and determine as a matter of law whether the evidence could support an inference of guilt beyond a reasonable doubt." *Ashfield*, 735 F.2d at 106. In that regard, the court will not substitute its own judgment regarding what the court would conclude had it been the finder of fact. Rather, the court is limited to determining whether the factfinders made a permissible conclusion. *Id.*

 Federal Rule of Criminal Procedure 33 provides that "on the defendant's motion the court may grant a new trial . . .

of acquittal or a new trial, I will treat the motion as if it were filed pursuant to Rule 29

if the interests of justice so require." Within its discretion, the court may grant a defendant a new trial only if it finds that "there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir.2002). Additionally, the court must grant a new trial if errors occurred during the trial, and it is reasonably possible that such error, or combination of errors, substantially influenced the jury's decision. *United States v. Copple*, 24 F.3d 535, 547 n. 17 (3d Cir.1994).

## II. Claims

Defendant asserts that the following grounds entitle him to either an acquittal or a new trial: (1) trial court error regarding suppression; (2) trial court error regarding expert testimony; (3) insufficient evidence; and (4) trial court error regarding severance. I will go through each in turn.

### (1) Trial court error regarding suppression

With respect to this claim, Rich contends that the court erred in denying his motion to suppress the search conducted on December 17, 2001 and the stop and search conducted on October 11, 2001. In my findings of fact and conclusions of law regarding Rich's motion to suppress, which was made part of the record in this case and was marked C–1, I denied the motion to suppress. As my reasoning was fully explained in that document, I will not repeat the analysis here.

### (2) Trial court error regarding expert testimony

Rich contends that the court made two errors regarding expert testimony: (a) the

and Rule 33.

court erred in allowing the government to present expert testimony without having provided an adequate expert report; and (b) the court erred in qualifying Agent Jon Cohen as an expert.

### (a) The court erred in allowing the government to present expert testimony without having provided an adequate expert report

Federal Rule of Criminal Procedure 16(a)(1)(G) states:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.... The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed.R.Crim.P. 16(a)(1)(G).

In advance of trial, defense counsel requested an expert report from the government. (Record at 6–13 (February 3, 2004).) At the final pre-trial conference held on January 28, 2004, defense counsel stated that she had not yet received an expert report and renewed her request for one. (R., Transcript of Final Pre-trial Conference, at 17 (January 28, 2004).) At that time, I agreed that defense counsel was entitled to a report. *Id.* The government first provided defense counsel with an expert report on February 2, 2004. (R. at 6–13 (February 3, 2004).) On February 3, 2004, the first day of trial, defense counsel made a formal objection to both the timeliness and the content of the expert report. (*Id.*) At that time, I questioned defense counsel as to what counsel might have done had she received the report earlier. (*Id.*) Defense counsel responded that due to the timing of the disclosure of

the report, she hadn't had time to consult with her client or a potential defense expert witness. (*Id.*) After pointing out to defense counsel that, as of the final pre-trial conference on January 28, 2004, she was on notice that an expert report was forthcoming, I asked defense counsel how she would like to proceed. (*Id.*) In response, defense counsel requested that I preclude the expert testimony. (*Id.*) After denying that request, I asked defense counsel whether she needed time to consult with her client and a potential expert. Defense counsel indicated that she would proceed with trial. (*Id.*) I did, however, order the government to prepare a revised report, which was submitted to defense counsel on the morning of February 4, 2004 and was marked D–1. (R. at 6–13 (February 3, 2004); R. at 4–13 (February 4, 2004).) Defense counsel also objected to my allowance of this amendment. In response, I stated:

> I will allow the amendment, because you were not—it's not unfair prejudice to you, you knew very well what the—what it was going to say. Because you were told in my chambers the other day what it was going to be about ... you are not blind-sided.

(R. at 12 (February 4, 2004).) The amended report submitted by the government, and prepared by the expert, included a single sentence stating the expert's conclusion that the drugs possessed by Rich on both October 11, 2001 and December 17, 2001 were possessed for the purpose of distribution. (Exhibit D–1.) In addition to the one-sentence conclusion, the report contained a succinct, numbered list of several factors which led the expert to this conclusion, including, *inter alia*, "the firearm seized," "the quantity of cellular telephones seized," and "the weight of drugs seized." *Id.* The expert report did not include any information regarding how the

expert reached his conclusion, such as any analysis, process of evaluation, or methodology. Quite simply, the report stated factors and a conclusion but failed to link the facts to the conclusion. Defense counsel also objected to the new report, again on grounds of both content and lack of timeliness, and I overruled the objection. (R. at 4–13 (February 4, 2004).) The government's expert, Jon Cohen, testified on February 4, 2004.

In addition to objecting to the expert report prior to the expert's trial testimony, defense counsel also continuously objected during the expert's testimony. In sum, defense counsel argued that the following testimony was outside the scope of the expert report and should be precluded: (1) the amount of drugs that an average user would consume on a daily basis; (2) the violence surrounding the drug business in Philadelphia and the utilization of firearms; (3) the communication habits of drug dealers carrying multiple cell phones; (4) the attempts by drug dealers carrying multiple cell phones to evade law enforcement; (5) the different colored packaging indicating that the drug dealer is being supplied by various individuals; and (6) the amount of money carried by drug users as opposed to dealers. (R. at 42, 45, 47, 50, 54–55 (February 4, 2004).)

In *United States v. Lopez*, 271 F.3d 472 (3d Cir.2001), the Third Circuit held that even if the government failed to provide an expert report which included the bases and reasons for the expert's opinion and also failed to disclose the expert's resume until trial, a new trial was not warranted unless the appellant could show prejudice. In holding that these circumstances did not warrant a new trial, the Third Circuit began its analysis by assuming, *arguendo,*

that the government had violated Federal Rule of Criminal Procedure 16(a). *Lopez,* 271 F.3d at 483. The Third Circuit then turned to Rule 16(d)(2), which addresses the situation in which a party fails to comply with a discovery request. *Id.* According to Rule 16(d)(2), if a party fails to comply with a discovery request, the court has several options. Fed.R.Crim.P. 16(d)(2). Specifically, the court may order that party to permit the discovery or inspection, grant a continuance, prohibit that party from introducing the undisclosed evidence, or enter "any other order that is just under the circumstances."[2] *Id.* Recognizing that "on its face, the Rule does not require a district court to do anything," and further refusing to "second guess the District Court's view of what was 'just,'" the Third Circuit held that a new trial was warranted only where "the District Court's actions resulted in prejudice to the defendant." *Lopez,* 271 F.3d at 483–84; *see also United States v. Davis,* 233 F.Supp.2d 695, 699–700 (E.D.Pa.2002). Further elucidating this standard, the *Lopez* court cited the decision in *United States v. Mendoza,* in which the Ninth Circuit held that failure to comply with Rule 16 only required reversal where the appellant "demonstrate[d] prejudice to substantial rights [where] [t]he prejudice ... is a likelihood that the verdict would have been different had the government complied with the discovery rules, not had the evidence [been] suppressed." 244 F.3d 1037, 1047 (9th Cir.2001), *quoted in Lopez,* 271 F.3d at 483–84. Additionally, by citing with approval the Seventh Circuit's decision in *United States v. Miller,* in which the court held that where the government failed to properly disclose expert witness testimony, a new trial was not warranted

**2.** Although Federal Rule of Criminal Procedure 16(d)(2) was worded slightly differently in 2001, it is substantively the same as the current Rule 16(d)(2) for purposes of this analysis.

unless "the remedy offered by the district court was inadequate to provide [the defendant] with a fair trial," the *Lopez* court demonstrated that an analysis of prejudice also includes consideration of the remedies offered by the trial court. *United States v. Miller*, 199 F.3d 416 (7th Cir.1999), *cited with approval in Lopez*, 271 F.3d at 483. Because the *Lopez* court ultimately concluded that the defendant had failed to show prejudice, the court declined to grant the extreme remedy of a new trial. *Lopez*, 271 F.3d at 484.

■ Assuming, *arguendo*, that the government failed to provide an adequate expert report in this case, I am required under *Lopez* to determine whether Rich was prejudiced by that failure. Additionally, I will consider whether, in light of the government's presumed failure to comply with Federal Rule of Criminal Procedure 16(a), "the remedy offered by . . . [this court] was inadequate to provide [the defendant] with a fair trial." *United States v. Miller*, 199 F.3d 416 (7th Cir.1999) *cited with approval in Lopez*, 271 F.3d at 483. As previously stated, when defense counsel objected to the timing and content of the report, I asked defense counsel whether she needed time to consult with her client and a potential expert. Defense counsel declined my offer. Defense counsel had several available options: she could have requested a *Daubert* hearing prior to trial, or she could have requested a continuance to consult a potential defense expert. *See Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). While I decline to express an opinion on defense counsel's

decision not to pursue these options, as defense counsel ably represented her client and such a decision might very well have been sound trial strategy, I find that the remedies I offered were adequate. Furthermore, I find that the failure of the government to fully comply with Rule 16 did not prejudice Rich because it is not likely that the verdict would have been different had the government provided a more extensive expert report.

■ In her supplemental brief, defendant states "counsel asked not for compliance with Rule 16(a) but instead asked for compliance with the body of cases which exist and which specify not only that counsel is entitled to a report which comports with the *Daubert* requirements of methodology but also that all testimony deviating from that report must be stricken." (Def.'s Supp. Br. at 2–3.) Defense counsel appears to be operating under the assumption that not only must expert testimony comport with the standards set forth in *Daubert*, but also that the expert report must as well. This is incorrect. Federal Rule of Criminal Procedure 16, which addresses the disclosure and content of expert reports, and Federal Rule of Evidence 702,[3] which governs the admissibility of expert testimony, are two independent requirements. Moreover, the amended Rule 702 represents the outgrowth of the Supreme Court's landmark decisions in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), in which the Supreme Court held that trial court judges have the responsibility to act as "gatekeepers" for

---

**3.** Federal Rule of Evidence 702 provides:
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the

form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Fed.R.Evid. 702.

the purpose of excluding unreliable expert testimony.[4] *Daubert,* 509 U.S. at 597. Although expert testimony must meet the standards set forth in *Daubert* and its progeny, there is no authority for defendant's proposition that expert reports, submitted pursuant to Rule 16(a), must independently meet those requirements. Rather, if counsel believes that proposed expert testimony is unreliable, counsel can request a *Daubert* hearing. Again, counsel never requested a Daubert hearing in this case.[5]

### (b) The court erred in qualifying Agent Jon Cohen as an expert

■ With respect to Rich's contention that the court erred in qualifying Agent Jon Cohen as an expert, I find this argument to be meritless. Agent Cohen testified that he had worked with the Bureau of Narcotics Investigations (BNI) for sixteen years, twelve of which he was assigned to the Drug Enforcement Agency (DEA). Prior to his employment at BNI, Cohen was a police officer for approximately eight years. (R. at 31–32 (February 4, 2004).) During his career, Agent Cohen estimated that he had been involved in over 1,800 narcotics investigations. (*Id.* at 32.) Officer Cohen further stated that he received training in the field of narcotics investigations through the Pennsylva-

nia State Police, the Municipal Police Training Academy, the Pennsylvania Attorney General's Office, the University of Northern Florida, the Federal Bureau of Investigation Drug Enforcement Administration, the Bureau of Alcohol, Tobacco and Firearms, the United States Army, and several other agencies. (*Id.* at 33.) Agent Cohen also testified that he is on the staff of the Drug Enforcement Administrative Divisional Training Program, where he has instructed others in the fields of cocaine and crack distribution for seven years. (*Id.* at 34.) As to the bases for his opinions, Agent Cohen testified that his opinions are based on the training he has received and the experiences he has had making drug purchases, supervising other law enforcement personnel making drug purchases, and interviewing defendants or informants who have been involved in the purchase or sale of drugs. (*Id.* at 37.)

■ The Third Circuit has referred to the requirements of Rule 702 as the "trilogy of restrictions on expert testimony: qualification, reliability and fit." *Calhoun v. Yamaha Motor Corp.,* 350 F.3d 316, 321 (3d Cir.2003). Although Rich challenges the qualifications of Agent Cohen,[6] I will briefly explicate each of these

4. In *Kumho Tire Co.,* the Supreme Court further clarified that the gatekeeping function of the trial judge applies not only to scientific testimony, but also to testimony based on "technical" or "other specialized" knowledge as well. *Kumho,* 526 U.S. at 141, 119 S.Ct. 1167.

5. The court has no obligation, *sua sponte,* to conduct a *Daubert* hearing. *United States v. Jasin,* 292 F.Supp.2d 670, 680 (E.D.Pa.2003). Regardless, the Third Circuit has held that the kind of expert testimony offered in this case is appropriate. *United States v. Perez,* 280 F.3d 318, 341–42 (3d Cir.2002) (holding that the *modus operandi* of drug trafficking, such as the use of cellular telephones to frustrate po-

lice investigations, is an appropriate or reliable field for expert opinion).

6. In contesting Agent Cohen's qualifications, Rich appears to again argue that Agent Cohen's testimony fails to satisfy the standards elucidated in *Daubert.* As previously stated, both prior to and during trial, defense counsel repeatedly challenged the expert report as inadequate, at times specifically arguing that the expert report did not satisfy the standards of *Daubert.* Again, there is no authority for the proposition that the expert report itself must satisfy *Daubert'*s requirements. At no point did defense counsel request a *Daubert* hearing and the court has no obligation, *sua*

three prerequisites: Qualification requires that the witness have specialized expertise. Furthermore, the standard of expertise is a liberal one such that "a broad range of knowledge, skills, and training [can] qualify an expert as such." *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir.1994)). Reliability requires that "the expert's opinion . . . be based on the methods and procedures of science, rather than . . . subjective belief or unsupported speculation" and that the expert have "good grounds" for the opinion. *Id.* (Internal quotations omitted). Finally, the expert testimony must "fit." *Id.* In other words, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Id.* (quoting *Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir.2003)).

Based on Agent Cohen's experience, training, and education in the field of narcotics investigations, the qualification of Agent Cohen as an expert in the packaging and distribution of crack and cocaine was not error. Fed.R.Evid. 702 (expert can be qualified "by knowledge, skill, experience, training, or education").

### (3) Insufficient evidence

Next, Rich contends that the evidence presented by the government at trial was insufficient to convict him on Counts 1, 2, and 3. As stated previously, when a defendant moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the ground that insufficient evidence supports the jury's verdict, this Court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir.2002). In perform-

ing this task, the court may not re-weigh the evidence, nor reassess the credibility of witnesses, as both of these functions are for the jury. *United States v. Casper*, 956 F.2d 416, 421 (3d Cir.1992). Accordingly, a finding of insufficiency should be "confined to cases where the prosecution's failure is clear." *Smith*, 294 F.3d at 477.

In order to decide whether there was insufficient evidence in this case, I will first include a quick synopsis of the evidence presented.

### a. Count 1

The evidence presented by the government with respect to Count 1 of the indictment consisted of the following. Officers Nixon and Mcknight testified that while working undercover at DiNic's bar at 2100 S. Mole Street, they met a man, Mr. Pauline, and inquired about obtaining cocaine from him. Mr. Pauline then made a phone call from a pay phone outside of DiNic's bar to facilitate the purchase. Within minutes of the call being placed, a car driven by Rich pulled onto the block. Officer Nixon then handed Mr. Pauline twenty dollars in pre-recorded buy money. Mr. Pauline entered the car, and exited approximately forty seconds later. Mr. Pauline then handed Officer Nixon a pink-tinted packet of cocaine. Soon thereafter, the car was stopped by the police and Rich, the driver, was searched. Police recovered the twenty dollar pre-recorded bill from Rich as well as approximately two thousand dollars in cash. Additionally, multiple packets of cocaine were found between the center console and the passenger seat of the car. (R. at 82–96, 104, 110, 117–31 (February 3, 2004).)

### b. Counts 2 and 3

The evidence presented by the government at trial with respect to Counts 2 and

*sponte,* to conduct one. *Jasin,* 292 F.Supp.2d at 680 (E.D.Pa.2003).

3 was no different than that presented during the suppression hearing.[7] Furthermore, there is no question that the evidence was clearly sufficient to convict Rich on these counts. The only evidence not detailed in my prior memorandum is the expert testimony of Officer Cohen, who testified that the narcotics found inside Rich's car and on Rich on the dates of December 17, 2001 and October 11, 2003, as well as the surrounding circumstances, were consistent with possession for distribution as opposed to personal use. (R. at 31–56 (February 4, 2004).)

In sum, I find that the evidence presented was such that a rational finder of fact could conclude that no reasonable doubt existed as to Rich's guilt on each of the three counts. Defendant's motion for acquittal based on insufficiency of the evidence is denied.

### (4) Trial court error regarding severance

Finally, Rich contends that the court erred in refusing to sever Counts 1, 2, and 3 of the indictment. To determine whether it was error to refuse to sever the counts, it is first necessary to determine whether the counts were properly joined. Federal Rule of Criminal Procedure 8(a) governs joinder and provides, in pertinent part:

> Two or more offenses may be charged in the same indictment ... in a separate count for each offense if the offenses charged ... are of the same or similar

character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Fed.R.Crim.P. 8(a). "The obvious purpose of Rule 8(a)'s liberal joinder provision is to promote judicial and prosecutorial economy by the avoidance of multiple trials." *United States v. Niederberger,* 580 F.2d 63, 66 (3d Cir.1978). In this case, because Rich was charged with the same offense, specifically possession with the intent to distribute a controlled substance, on three occasions, Rule 8(a)'s requirement is clearly met. *Id.* (holding that joinder of offenses was clearly permissible because the crimes charged were all of the same or similar character).

■■■ Prior to trial, defense counsel moved to sever Counts 1, 2, and 3 pursuant to Federal Rule of Criminal Procedure 14. Rule 14 is the proper remedy for prejudicial joinder and provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Because the evidence as to each of the offenses was relatively short and simple, there was no prejudice from joining the separate offenses.[8] *See United States v.*

---

7. The evidence presented by the government during the suppression hearing is detailed in my findings of fact and conclusions of law marked as Exhibit C–1 and made part of the record in this case.

8. As noted by the Court of Appeals for the District of Columbia Circuit, the kinds of prejudice that can result from joinder include the following:

> (1) [the defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not

*Lotsch,* 102 F.2d 35, 36 (2d Cir.1939) (L.Hand, J.) (holding that where evidence as to each of three counts was "short and simple" and "there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each[,]" joinder was proper). Furthermore, any potential prejudice was mitigated by my instructions to the jury, which included the following:

> A separate crime or offense is charged against the defendant in each of the counts of the indictment which you will be asked to consider. Each offense, and the evidence pertaining to it, should be considered separately. The fact that you may find the defendant guilty or not guilty as to one of the offenses charged should not control or impact your verdict as to any other offense charged against the defendant.

(R. at 116–17 (February 4, 2004).) Because juries are presumed to follow their instructions, any potential for improper cumulation of the evidence of the separate crimes due solely to the joinder of the charges was cured by these instructions. *United States v. Edmonds,* 80 F.3d 810, 825 (3d Cir.1996) (noting the "assumption that jurors follow the instructions they are given").

If joinder of the three offenses were the only basis for Rich's assignment of error, I would not hesitate to find a lack of error or prejudice. This, however, is not the case here. Rather, Rich argues that the prosecutor also erred in closing argument when she essentially asked the jury to cumulate the evidence of each of the crimes charged, and to infer a criminal disposition on the part of the defendant, stating:

> so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one.

Now, there are common threads that run through each and every one of these incidents that I just want you to consider briefly.... In all three incidents, each time you're talking about crack and cocaine. In all three incidents, each time you're talking about narcotics found either under or around the driver's seat area.... Each time, the defendant is the one driving the vehicle. Each time, the defendant has on him ... more than $350 in United States currency ... most of it in small denominations. And you have all of this occurring in the same areas of the city.

(R. at 83 (February 4, 2004).) As if this were not enough, the prosecutor concluded by asking the rhetorical question: "He's just so unlucky that he happens to be in three cars where things are secreted all over them that he doesn't know about, on three different occasions?" (*Id.* at 84.) After the government's closing argument, defense counsel renewed her severance motion, noting specifically that the government had improperly "linked" all three of the incidents. (*Id.*)

It is unequivocally clear that the prosecutor's remarks were improper. The government's comments during closing argument invited the jury to do precisely what the law implores them not to do: to cumulate the evidence of the individual crimes charged and to infer a criminal disposition on the part of the defendant. The government defends its actions by stating:

> The fact that Rich was stopped on three separate days under very similar circumstances was something the jury was already aware of through the evidence presented by the government. *By refer-*

*Bradley v. United States,* 433 F.2d 1113, 1117 n. 12 (D.C.Cir.1969).

ring to Rich's "being unlucky," the government was simply underscoring the idea that to use this theory for three separate incidents is highly improbable. (Gov't's Supp. Br. at 5 (emphasis added).) The government unwittingly hit the nail with its head: by referring to "common threads," the government blatantly underscored its position that the three incidents should be considered cumulatively, as opposed to independently.

■■■ In *United States v. Gambone,* 314 F.3d 163 (3d Cir.2003), the Third Circuit conducted a harmless error analysis in deciding whether a new trial was warranted because of improper remarks made by the prosecutor during closing argument. Harmless error analysis requires that the court consider the error in light of the record as a whole, and the applicable standard depends on whether or not the error is of constitutional proportions. *United States v. Zehrbach,* 47 F.3d 1252, 1265 (3d Cir.1995). If the error is of constitutional proportions, the court must set aside the conviction unless the error is harmless beyond a reasonable doubt. *United States v. Molina–Guevara,* 96 F.3d 698, 703 (3d Cir. 1996). If the error does not involve a violation of a constitutional right, the conviction can be upheld so long as there is a "high probability" that the error did not contribute to the conviction. *United States v. Jannotti,* 729 F.2d 213, 219 (3d Cir.1984). "High probability" requires that the court possess a "sure conviction that the error did not prejudice" the defendant. *Jannotti,* 729 F.2d at 219–20. A conviction will be reversed, therefore, if the prosecutor's remarks, taken in the context of the trial as a whole, prejudiced the defendant. In *United States v. Mastrangelo,* the Third Circuit outlined three factors to be considered in determining whether improper comments were prejudicial: (a) the scope of the comments within

the context of the entire trial; (b) the effect of any curative instructions given; and (c) the strength of the evidence against the defendant. 172 F.3d 288, 297 (3d Cir.1999).

■■■ It is necessary, therefore, to first decide whether the prosecutor's improper comments constituted an error of constitutional proportions. As a general matter, it is widely recognized that a prosecutor's remarks can be "undesirable or even universally condemned" and yet not rise to the level of a constitutional violation. *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Rather, the "relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotations omitted). Although I find that the prosecutor's improper comments did, in fact, infect the trial to such an extent that the conviction of Rich was a denial of due process, because the higher standard applicable to non-constitutional errors is met in this case, I need not make such a finding.

■■■ Under the standard applicable to non-constitutional errors, I must consider whether the prosecutor's remarks prejudiced the defendant. In conducting this analysis, I am guided by the factors outlined by the Third Circuit in *Mastrangelo.* Furthermore, I must not evaluate the comments in isolation, but instead must consider the comments in the context of the trial as a whole. The first factor, the scope of the comments within the context of the entire trial, weighs heavily in favor of the defendant. Rich's trial was extremely brief, lasting only one and a half days. As stated previously, the evidence presented with respect to the three counts of possession with intent to distribute narcotics was "short and simple" such that the prosecutor's repeated emphasis on the "common

threads" between them provided an overarching, yet impermissible, theme to the government's closing argument, and, by implication, to its theory of the case. *But cf. Gambone,* 314 F.3d at 180 (noting that "the prosecutor's objectionable comment amounted to less than half of a page out of over 3200 pages of trial transcript" and "represented only a fleeting moment in a four-week trial"). The weight of the second factor, or the effect of any curative instructions given, favors neither the government nor the defense. As previously stated, I find that, considered in isolation, Rich did not suffer prejudice as a result of the joinder of his offenses. Consideration of the prejudice that resulted from joinder in this case, however, must include more than the fact of joinder in itself, but also the effect of joinder in light of the prosecutor's closing remarks. Although I specifically instructed the jurors to consider the evidence of each count separately, and I am cognizant of the general principle that jurors are presumed to follow their instructions, at some point, a curative instruction cannot undo the damage of improper argument. *See supra* Part II.4 (quoting instruction). Because I am reluctant to fix the point at which this occurs, I note only that the curative instruction represented one paragraph in twenty-two pages of instructions read aloud to the jury. The third factor, the strength of the evidence against the defendant, also weighs in favor of the conclusion that the improper comments prejudiced the defendant. Although the evidence was sufficient to convict Rich of the three counts of possession with the intent to distribute narcotics, see supra Part II.3, the evidence, when considered separately as to each count (as we must), was not overwhelming.

In sum, taken in the context of the trial as a whole, the improper comments did, in fact, prejudice Rich and contribute to the judgment. Rich's motion for a new trial on all three counts based on the prosecutor's improper closing argument is granted.

## III. Conclusion

Due to the prosecutor's improper comments during closing argument, which essentially asked the jury to cumulate the evidence presented in the three counts against Rich, Rich's motion for a new trial on Counts 1, 2, and 3, pursuant to Federal Rule of Criminal Procedure 33, is granted. Rich's motion for a judgment of acquittal is denied.

### *ORDER*

AND NOW, this _____ day of July 2004, it is **ORDERED** that defendant's amended motion for motion for judgment of acquittal or new trial (Docket Entry # 72) is **GRANTED–IN–PART** and **DENIED–IN–PART**. Defendant's motion for a new trial with respect to Counts 1, 2, and 3 is **GRANTED**. Defendant's motion for a judgment of acquittal is **DENIED**.