

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2005

# USA v. Davis

Precedential or Non-Precedential: Precedential

Docket No. 02-4521

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Davis" (2005). *2005 Decisions.* Paper 1510.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1510

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-4521

———

UNITED STATES OF AMERICA

v.

KEVIN DAVIS
Appellant

———

No. 03-1130

———

UNITED STATES OF AMERICA

v.

KEVIN A. MINNIS
Kevin Minnis
Appellant

———

No. 03-1160

———

UNITED STATES OF AMERICA

v.

REGINAL SCOTT
Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 02-cr-00106-1, 02-cr-00106-3, 02-cr-00106-2)
District Judge: Hon. Marvin Katz

———

Submitted Under Third Circuit LAR 34.1(a)
October 7, 2004

Before: SLOVITER, VAN ANTWERPEN, and COWEN,
<u>Circuit Judges</u>

(Filed: February 11, 2005)

———

Joseph C. Santaguida
Philadelphia, PA 19107

        Attorney for Appellant Kevin Davis

Stephen H. Serota
Philadelphia, PA 19102

        Attorney for Appellant Kevin Minnis

Robert E. Welsh, Jr.
Welsh & Recker, P.C.
Philadelphia, PA 19103

        Attorney for Appellant Reginal Scott

Patrick L. Meehan
        United States Attorney
Laurie Magid
        Deputy United States Attorney
        for Policy and Appeals
Robert A. Zauzmer
        Assistant United States Attorney
        Senior Appellate Counsel

2

Paul Mansfield
        Assistant United States Attorney
Curtis R. Douglas
        Assistant United States Attorney
Philadelphia, PA 19106

        Attorneys for Appellee


OPINION OF THE COURT


SLOVITER , Circuit Judge.

        We have before us the appeal of defendants Kevin Davis, Kevin A. Minnis, and Reginal Scott, who were tried together and who were each found guilty by the jury of both possession of cocaine base or crack with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm during and in relation to an underlying drug felony in violation of 18 U.S.C. § 924(c)(1)(A).[1]  We have before us both merits issues and sentencing issues.  Although defendants raise a number of issues on the merits, we focus primarily on the defendants' contention that the District Court abused its discretion in admitting the testimony of the government's expert witness, Philadelphia Police Officer Derrick Garner, and the defendants' contention that the District Court abused its discretion in refusing to sever Reginal Scott's trial from the trial of the other two defendants.

**I.**

        Two police officers traveling in South Philadelphia in an unmarked car saw six or seven shots fired from the passenger side of a black Honda automobile one block in front of them on 17th and Annin streets.  The officers immediately activated their

_____

        [1] In a separate trial before the same jury, Minnis was also found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

3

lights and siren, and pursued the Honda when the Honda did not stop. Within a few minutes, a marked police car also joined the chase led by the fleeing vehicle as it traveled at a high rate of speed, passed a number of red lights and stop signs, and on several occasions drove the wrong way on one-way streets. The police cars never lost sight of the Honda, and they eventually forced it to stop. All four doors immediately opened and the passengers attempted to exit.

Officer Brook, one of the officers in the marked car, testified that he observed Reginal Scott exit from the back passenger seat and Kevin Davis emerge from the front passenger seat. According to Officer Brook, Scott initially put up his hands and surrendered, but then began inching away from the car. At the same time, Davis attempted to flee on foot and Officer Brook pursued him. According to Officer Brook, Davis pointed his firearm at him and he then fired one shot and hit Davis. A pistol was recovered from the area where Davis fell. Davis was then taken to the hospital by Officers Haines and Thomas who recovered from Davis $169.00 in cash and one plastic baggie containing nineteen zip-lock packets of cocaine base.

Officer Bucceroni, who was with Officer Brook, observed Kevin Minnis exiting the vehicle with a semi-automatic firearm in his right hand. Officer Bucceroni instructed Minnis to drop the firearm. After he complied the officer retrieved the weapon, placed Minnis under arrest, and, in the search incident to the arrest, recovered twelve packets containing cocaine base. At approximately the same time, Officer Dawsonia, who arrived on the scene after responding to the radio call for assistance, was instructed to stop Scott who had been slowly attempting to inch away. Upon hearing this instruction, Scott threw a handgun onto the ground and was arrested by Officer Dawsonia, who searched Scott and recovered forty-four packets of cocaine base from his pocket. Ballistics tests later confirmed that the firearm recovered from

4

Scott was the weapon fired at 17th and Annin Streets.[2]

Defendants were convicted following a jury trial on the drug and weapons charges referred to above. Defendant Minnis, who sought and was granted a bifurcated trial on the charge under 18 U.S.C. § 922(g)(1), was also found guilty of that charge. See note 1 supra. The District Court denied defendants' motions for acquittal under Federal Rule of Criminal Procedure 29 and for a new trial pursuant to Rule 33. United States v. Davis, 233 F. Supp. 2d 695 (E.D. Pa. 2002). Defendants filed a timely appeal.

## II.

Defendants argue first that the District Court erred in admitting as expert testimony the responses of Officer Garner to the following hypothetical question: whether, assuming that "five persons were in a car, four of whom possessed handguns," and that "one person possessed a handgun with 12 packets, another person possessed a handgun with 19 packets, [and] one person . . . possessed a handgun with 44 packets," "would you say that would be consistent with drug trafficking or consistent with possession, simple possession." Jt. App. at 314a. Officer Garner responded, "It would be my opinion that would be possession with intent to deliver the narcotics." Id. He further explained that the bases for his opinion were "[t]he gun would be one factor, the narcotics would be the other," and "[t]he number of people in the vehicle and the circumstances of the arrest" would all play a factor." Id. at 314a-15a.

Defendants contend that the government did not provide adequate discovery with regard to this testimony and they argue that there was no scientific basis for Officer Garner's opinion. We review the District Court's decisions regarding the admission of expert testimony for abuse of discretion. See United States v Watson, 260 F.3d 301, 306 (3d Cir. 2001).

_____

[2] The vehicle was driven by someone other than the defendants.

With regard to expert witnesses, under Rule 16(G) of the Federal Rules of Criminal Procedure, the government must disclose, upon a defendant's request, "a written summary of any testimony that the government intends to use." In addition, if the government makes a reciprocal discovery request then the written statement must include the "witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(G). Because both parties requested discovery, the government was obligated to provide the more extensive written summary. Although we agree with defendants that the government failed to adequately satisfy this requirement, we have held that a new trial is only warranted if the "District Court's actions resulted in prejudice to the defendant." United States v. Lopez, 271 F.3d 472, 483 (3d Cir. 2001).

Defendants do not argue that they were prejudiced by the inadequate discovery. They simply argue that because the government did not fully comply with its discovery obligations they are entitled to a new trial. However, this argument was addressed and dismissed in Lopez, where we stated that "'the prejudice that must be shown to justify reversal for a discovery violation is a likelihood that the verdict would have been different had the government complied with the discovery rules.'" Id. at 483-84 (quoting United States v. Mendoza, 244 F.3d 1037, 1047 (9th Cir. 2001)). The defendants in this case have failed to establish any prejudice stemming from the government's inadequate discovery, and therefore the District Court did not abuse its discretion in denying defendants' request for a new trial.

Defendants also argue that there is no objective basis for Officer Garner's testimony and that it fails the analysis required by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), because "there was absolutely no pretense of scientific method, scientific testing, peer review in publication, a known or potential rate of error, and the extent to which [Officer Garner's] theory is generally accepted." Jt. App. at 41a. However, the factors enumerated in Daubert were intended to apply to the evaluation of scientific testimony, and they have little bearing in this case.

6

In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court recognized that "there are many different kinds of experts, and many different kinds of expertise," id. at 150, and "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Id. at 141. The Court held that Daubert's list of specific factors would often be of little use in evaluating non-scientific expert testimony and, as a result, the Court expanded Daubert's general holding to apply to expert testimony based on "technical or other specialized knowledge." Id. at 141.

Federal Rule of Evidence 702 states that a court may permit expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Under Daubert, a trial court must evaluate such testimony and make sure it "rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. Officer Garner's testimony fully satisfied both these requirements. He was a fourteen-year veteran of the Philadelphia police force with twelve years of experience in narcotics. His testimony concerned the methods of operation for drug traffickers in the South Philadelphia area, a topic which we have held is a suitable topic for expert testimony because it is not within the common knowledge of the average juror. United States v. Theodoropoulos, 866 F.2d 587, 590-92 (3d Cir. 1989), overruled on other grounds as recognized in United States v. Price, 786 F.3d 526 (3d Cir. 1996). We are satisfied that Officer Garner's testimony concerned a proper subject matter for expert testimony, and he provided a reliable opinion based on years of experience. His testimony was thus admissible under both the Federal Rules of Evidence and Daubert.

Finally, defendants argue that Officer Garner's testimony was inadmissible under Federal Rule of Evidence 704(b) because it concerned an opinion regarding the appellants' state of mind. In interpreting this rule, and evaluating the fine line between permissible and impermissible testimony, we have stated that

[e]xpert testimony is admissible if it merely

7

supports an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.

United States v. Watson, 260 F.3d 301, 308 (3d Cir. 2001) (internal citations and quotations omitted).

Defendants argue that by allowing Officer Garner to testify that their possession under the circumstances was "consistent" with "intent to distribute," the District Court permitted a violation of Fed. R. Evid. 704(b). They rely on our opinion in Watson where we held that the expert's testimony regarding the defendant's intent violated Rule 704(b). In this case, unlike in Watson where the government's questions were "plainly designed to elicit the expert's testimony about the mental state of the defendant," 260 F.3d at 309, Officer Garner's testimony was given in response to hypothetical, rather than specific, questions regarding the intent of individual defendants on trial. Although the District Court noted that the hypothetical presented to Officer Garner closely resembled the circumstances of this particular case, unlike in Watson "the government did not repeatedly refer to the individual defendant's state of mind when questioning the government expert." Davis, 233 F. Supp. 2d at 703. In addition, no evidence was presented that Officer Garner had any direct relationship with the investigation or the defendants and, therefore, there was no potential for the jury to conclude that Officer Garner had any special insight into the thoughts or intent of the defendants. Consequently, the District Court did not abuse its discretion in finding that Officer Garner's testimony did not violate Fed. R. Evid. 704(b).

## III.

Defendant Scott, whose defense was that he was not in the black Honda, argues that the District Court abused its discretion in denying a mistrial based on the testimony of Officer Brook. Counsel for Scott, in cross-examining Officer Brook,

attempted to establish that Scott was known to frequent the area of 1300 Capital Street, near where the black Honda was stopped. The relevant testimony was as follows:

> **Question:** You told us that you know Mr. Scott, you're familiar with him? Is it correct, that you know Mr. Scott because he lives in the area or hangs around in the area of 1300 Capital Street?
>
> **Officer Brook:** Point Breeze and Morton, yes, I had dealings with him, by Officers Tacco and Tolliver, he fired a gun – I chased, I was the responding officer.
>
> **Defense Counsel:** I object as nonresponsive.
>
> **Court**: You asked a question and you got an answer. I think the officer is entitled to answer your question.
>
> . . .
>
> **Question:** Now, are you also familiar with him, from seeing him hang around 13th and Capital?
>
> **Officer Brook:** Certainly.
>
> **Question:** You have from time to time with the other officers asked him to disperse?
>
> **Officer Brook:** Yes.
>
> **Question:** Repeatedly he is told not to hang around there, officers tell him and his friends to go home?
>
> **Officer Brook:** Dispersal off the corner. When there are disorderly crowds, it is a known drug location, we get numerous complaints in the area for several different locations in the area.

9

**Defense Counsel:** I object as nonresponsive.

Jt. App. at 189a-190a.

Scott argues that Officer Brook testified with the "express and manifest purpose of prejudicing [the] jury," Appellants' Br. at 38, that the prejudice from this testimony is overwhelming, and that because the evidence of Scott's guilt is scant he is entitled to a mistrial.

When evaluating whether a prosecution witness made prejudicial remarks, a court must examine "(1) whether [the witness's] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury, (2) the strength of the other evidence, and (3) curative action taken by the district court." United States v. Xavier, 2 F.3d 1281, 1285 (3d Cir. 1993). Using these criteria, the District Court found that the witness's remarks were "neither pronounced nor persistent in that Officer Brook merely responded to two questions posed by defense counsel." Davis, 233 F. Supp. 2d at 704. In addition, the District Court found that Officer Brook's testimony was "conscientious, conservative, and by no means malicious" and that the "evidence against defendant Reginal Scott was strong and the court's contemporaneous cautioning instruct[ion] cured any prejudice." Id.

The District Court was in the best position to observe the witness's demeanor and to determine whether Officer Brook's testimony was in fact "malicious." Its finding, therefore, deserves great deference. Officer Brook's answers were the logical result of the form and manner of defense counsel's questions. Officer Brook's statement that Scott frequently hung out at a "known drug location" was in response to defense counsel's third question about his familiarity with Scott. We cannot agree with Scott that this information was "enthusiastically volunteered." Appellants' Br. at 38. There were only two arguably objectionable responses and no evidence that either was made maliciously. We do not believe they can be considered "pronounced and persistent, creating a likelihood they would mislead and prejudice the jury." Xavier, 2 F.3d at

10

1285.

Moreover, contrary to Scott's assertion, the other evidence against him was significant. Officer Bucceroni testified that he saw Scott get out of the vehicle involved in the high speed chase; Officer Capara testified that she observed Scott toss a handgun from his waist band; and Officer Dawsonia testified that she recovered forty-four packets of cocaine base or crack from Scott in a search incident to arrest. Accordingly, there was substantial evidence that Scott possessed cocaine base or crack with intent to distribute and possessed a firearm in connection with that offense.

Finally, immediately after defense counsel concluded his cross-examination of Officer Brook, the District Court instructed the jury that it should disregard "'other things collateral matters, marginal things, that have nothing to do with this case.'" Davis, 233 F. Supp. 2d at 704 (quoting trial transcript). In particular, the Court informed the jury that "[m]isconduct on other days, in other situations and other connections [is] not part of this case" and that the jury should not consider it. Jt. App. at 207a.

Both this court and the Supreme Court have held that courts must "'normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented it to.'" United States v. Fisher, 10 F.3d 115, 119 (3d Cir. 1993) (quoting Greer v. Miller, 483 U.S. 756, 766 n.8 (1987)). Therefore, we have held that the proper remedy for incorrect admission of evidence is an instruction to disregard. United States v. Newby, 11 F.3d 1143, 1147 (3d Cir. 1993). It follows that the District Court did not err in refusing to declare a mistrial following Officer Brook's testimony.

**IV.**

Appellants raise a number of other issues, none of which is sufficient to warrant a new trial. We held in United States v. Johnson, 302 F.3d 139 (3d Cir. 2002), that a district court "can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a

11

serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." 302 F.3d at 150 (internal citations and quotations omitted). We continue to apply the standard articulated in Johnson, notwithstanding the possibility that other courts may apply a more lenient standard. Although there were no observations of defendants actually engaging in the sale of drugs, the government's expert witness testified that the presence of a group of men in a car together, the number of firearms, and the lack of drug paraphernalia was consistent with intent to distribute as opposed to personal possession.

We have held that the presence of a gun in connection with the commission of another felony permits the inference that the gun was intended to facilitate or potentially facilitate the crime. In such cases, the presence of a firearm is not considered a mere coincidence or accident. See United States v. Williams, 344 F.3d 365, 371-72 (3d Cir. 2003) (finding that jury could infer that presence of gun in car had "potential of facilitating" robbery and occurred "in relation to" robbery).

A factfinder is permitted to give significance to the presence of a gun, particularly when the gun is combined with the presence of drugs. It follows that the presence of drugs in this case together with the guns and the number of people in the car provided a reasonable basis for the jury to conclude that the defendants were engaged in drug trafficking. Because the power to grant a motion for a new trial is broader than the court's power to grant a motion for a judgment of acquittal, our determination that defendants are not entitled to a new trial means that they are similarly not entitled to a judgment of acquittal. United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003).

Scott argues that the District Court erred in denying his motion to sever his trial from that of Davis and Minnis under Federal Rule of Criminal Procedure 8(b), which permits the joinder of two or more defendants in the same indictment if the charges involve the "same act or transaction, or the same series of acts or transactions, constituting an offense." The Supreme

12

Court has stated that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993).

Scott argues that "[e]ach defendant was allegedly found in possession of drugs, seemingly unrelated to each other defendants' [sic] possession of drugs, and each defendant allegedly possessed a gun . . . without regard for the other defendants' possession." Appellants' Br. at 55. Nonetheless, these "seemingly unrelated" guns and drugs were all recovered from men riding together in the same car and, therefore, there was a strong basis to conclude that these guns and drugs were connected. Consequently, joinder was permissible because the charges did involve the same act or transaction.

Scott also argues that he was prejudiced by this joinder. In determining whether severance is appropriate, we have stated that "[a] claim of improper joinder under Fed. R. Crim. P. 14 must 'demonstrate clear and substantial prejudice.'" United States v. Gorecki, 813 F.2d 40, 43 (3d Cir. 1987) (quoting United States v. Sebetich, 776 F.2d 412 427 (3d Cir. 1985)). In addition, the Supreme Court has held that severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). In determining whether severance should have been granted, we review the District Court's decision for abuse of discretion; in the absence of an affirmative showing of an abuse of discretion, this court will not interfere with the Rule 14 determinations made by the District Court. United States v. Somers, 496 F.2d 723, 730 (3d Cir. 1974).

Scott argues that he was extremely prejudiced by being joined with Kevin Davis, who fled the scene and allegedly attempted to fire at a police officer. However, we held in Somers that "a defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party." Id. The issue is not whether the evidence against a co-defendant is more damaging

13

but rather whether the jury will be able to "compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." Id. (internal citations and quotations omitted). In this case, the facts are relatively simple; all the events occurred in a single evening; there are only three defendants; and there are no overly technical or scientific issues. Therefore, we conclude that the jury could reasonably have been expected to compartmentalize the evidence as it related to each individual defendant.

Scott also contends that he was prejudiced because he wished to present exculpatory evidence from Davis and Minnis, who could confirm that he was not in the black Honda on the night of his arrest. We have held that "[b]are assertions that co-defendants will testify are insufficient" to warrant separate trials. United States v. Boscia, 573 F.2d 827, 832 (3d Cir. 1978). Four factors need be considered: "(1) the likelihood of co-defendant's testifying; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendants could be impeached; [and] (4) judicial economy." Id. In addition, we have held that a defendant's claim that his co-defendants would testify on his behalf must be supported by the record, and the record must show more than simply the defendant's "request for declaration of [his co-defendants'] intent to testify." United States v. Gonzalez, 918 F.2d 1129, 1137 (3d Cir. 1990).

Applying the Boscia factors, the District Court found that Scott presented no evidence that the other defendants would testify and that even if they did testify, "their testimony could be seriously impeached." Supp. App. at 62. In addition, the Court believed that such testimony would have little exculpatory value and was outweighed by concerns for judicial economy.

At the time of Scott's severance motion, counsel for Scott stated that "I hope and expect . . . to call as witnesses, Mr. Minnis and Mr. Davis," but quickly added that "nobody can promise that they would testify." Supp. App. at 51-52. Although defense counsel for Minnis and Davis did not object to Scott's motion, neither one gave any indication that, if granted a

14

severance, their clients would testify on Scott's behalf. In fact, despite the fairly insistent urging from Scott's counsel for the other defense counsel to "support . . . or give some insight [] to the Court what they would say," counsel for Minnis and Davis remained silent. Supp. App. at 57-58. Scott's counsel suggested that the court allow Davis and Minnis to make an <u>in</u> <u>camera</u> statement to the court, yet when the court asked if they would like to make any statement, both declined. Supp. App. at 57-61. Accordingly, there is no evidence that either Minnis or Davis would have testified on Scott's behalf if the District Court had granted a severance. The District Court's decision to deny Scott's motion for severance was not an abuse of discretion.

For the reasons set forth, we will affirm the judgments of convictions on all three defendants.

## V.

Appellants challenge their sentences under <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005). In light of the determination of the judges of this court that the sentencing issues appellants raise are best determined by the District Court in the first instance, we vacate the sentences and remand for re-sentencing in accordance with <u>Booker</u>.

## VI.

For the reasons set forth above, we will affirm the judgments of conviction as to Kevin Minnis, Reginal Scott, and Kevin Davis. We will vacate and remand the judgments of sentence as to all three defendants.

_____

15