**UNITED STATES of America,**

**v.**

**Steven Michael DUGAN, Appellant.**

**No. 04–2103.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 30, 2005.

Decided April 1, 2005.

Bonnie R. Schlueter, Office of United States Attorney, Pittsburgh, PA, for United States of America.

Thomas J. Farrell, Reich, Alexander, Reisinger & Farrell, Pittsburgh, PA, for Steven Michael Dugan.

Before ALITO, SMITH, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

A jury in the United States District Court for the Western District of Pennsylvania found Steven Dugan, Chief of the Isabella Volunteer Fire Department ("Fire Department"), guilty of violating the federal mail fraud statute, 18 U.S.C. § 1341, for submitting through the mail an insurance claim containing false representations. The insurance claim was part of a scheme by members of the Fire Department to torch the department's deteriorating social hall and defraud the Selective Insurance Company into paying out fire insurance proceeds to build a new hall. Dugan moved for, but was denied, judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. At sentencing, Dugan requested a two-level downward adjustment under U.S.S.G. § 3B1.2 based on his alleged "minor role" in the offense. This, too, was denied. The District Court ultimately imposed a sentence of 35 months, along with three years of supervised release.

Dugan timely appealed, arguing there was insufficient evidence to prove that he knowingly aided and abetted the scheme to defraud the insurance company. Dugan also claims that the District Court made a factual error by concluding that he was more than a minor participant in the scheme and therefore unworthy of a "minor role" adjustment. Finally, Dugan challenges his sentence based on the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[1]

We affirm the conviction. However, in light of *Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, which determined that the federal sentencing guidelines are no longer mandatory but advisory in nature, we will vacate Dugan's sentence and remand to the District Court for resentencing in accordance with *Booker*.

### I

As we write solely for the parties, we include only those facts relevant to the issues presented on appeal. On the morning of June 26, 2002, a fire damaged the social hall of the Fire Department. Four days later, on June 30, 2002, a second fire completely destroyed the building. Both fires were committed by members of the Fire Department who wanted to destroy the social hall so that a new one could be built with the proceeds from the Department's $500,000 insurance policy. The first fire was solicited by Assistant Fire Chief Thomas Baker ("Baker") and set by Fire Department Vice–President Jerry Booker ("Booker"). The second fire was started by Booker and two other members of the Fire Department, William Robison and Dan Smith.

Prior to the fires, burning the hall had been a recurring topic of conversation among several firemen. Baker, Booker, and Fire Department Chief Engineer Tom Cooper ("Cooper") advocated on more than one occasion that the hall should be burned down. Furthermore, Baker reportedly stated in the presence of Dugan, Cooper, Booker, and others that the Department would be better off if the social hall burned down. In addition, approximately two months before the fires, Baker and Booker reportedly stated, again in the presence of Dugan, that if anything hap-

---

1. The District Court had jurisdiction based on 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291.

pened to the social hall they would be able to build a better one.

Dugan, present for many of the arson discussions, would respond to the comments by merely shaking his head and walking away. Other times, however, he would remain in the conversation or even suggest burning down the hall himself. At one point, Dugan reportedly stated that the social hall was too small and if it burned down it could be rebuilt so as to attract more business. On another occasion, around Easter 2001, Dugan suggested burning down the hall in retaliation for the disrespect patrons of the social hall were showing his father, a former Fire Chief.

Following the first fire on June 26, 2002, the Fire Department submitted a claim for coverage under the insurance policy. In response, the insurance company dispatched insurance adjuster John Marfinetz to assess the damage. While giving Marfinetz a tour of the fire-damaged hall, Dugan pointed to the deteriorating floor and claimed that the fire had warped it. As Dugan well knew, however, the floor had been warped prior to the fire. Indeed, long before the fire, Dugan had openly complained about the warping.

Following the second fire, the Fire Department submitted another claim for coverage. This time, the insurance company dispatched special investigator Pierre Khoury ("Khoury") to the scene. Upon his arrival, Khoury interviewed Dugan. In response to Khoury's interrogation, Dugan stated that he believed the fires were arson, but claimed that he had never heard anyone discuss burning the building.

On September 5, 2002, the Fire Department mailed a fraudulent affidavit of loss to the insurance company in an effort to collect on the $500,000 insurance policy. On the basis of this act, a grand jury indicted Dugan, along with fellow firemen Baker, Booker, and Robison, with mail fraud and aiding and abetting mail fraud, in violation of the federal statute. Baker, Booker, and Robison pled guilty.

Dugan argued in his motion for judgment of acquittal under Fed.R.Crim.P. 29 that there was insufficient evidence that he knowingly aided and abetted the mail fraud scheme. The District Court denied the motion. In addition, the District Court denied Dugan's motion for a "minor role" adjustment under U.S.S.G. § 3B1.2, citing his position as the Chief of the Fire Department, his failure to discourage others from burning the hall, his encouragement of the same, his misrepresentations to the insurance company, and his awareness of the nature and scope of the scheme. The District Court sentenced Dugan to 35 months in prison, followed by three years of supervised release. Dugan timely appealed.

## II

Dugan raises three issues on appeal. First, he claims there was insufficient evidence to prove that he knowingly aided and abetted the scheme to defraud the insurance company. Second, Dugan contends that the District Court made a factual error by concluding that he was more than a minor participant in the scheme and therefore unworthy of a "minor role" adjustment. Third, Dugan challenges his sentence under *Booker*, 125 S.Ct. 738.

### A. Evidence of mail fraud

In reviewing the sufficiency of evidence in support of a conviction, we apply a particularly deferential standard of review. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir.1998). We view the evidence in the light most favorable to the Government and indulge all reasonable inferences in favor of sustaining the jury's verdict.

*United States v. Pearlstein,* 576 F.2d 531, 534 (3d Cir.1978) (internal citations omitted). Viewing the record in this light, we must determine whether there is substantial evidence to support the conviction before us. *Id.*

The federal mail fraud statute, 18 U.S.C. § 1341, proscribes any "scheme or artifice to defraud" which involves the use of the postal system. *Pearlstein,* 576 F.2d at 534. The elements of a mail fraud offense are: (1) a scheme to defraud; (2) use of the mails to further that scheme; and (3) fraudulent intent. *United States v. Pharis,* 298 F.3d 228, 233 (3d Cir.2002).

Here, the first two elements are clearly established. The Government presented sufficient proof of a scheme to defraud the insurance company using the U.S. mails. The only issue, therefore, is whether there is sufficient evidence to prove that Dugan was aware of the scheme and acted with the intent to further it. In light of the overwhelming direct and circumstantial evidence in the record, we believe there is.

Dugan was informed by investigators that both fires were acts of arson. And Dugan had heard certain firemen discuss on numerous occasions burning down the hall for the insurance proceeds. Thus, when Dugan told the insurance investigator that he had never heard anyone discuss burning the hall, Dugan knew that was a falsehood, knew that the misrepresentation would frustrate the insurance investigation, and knew that such conduct would clear the way for the Fire Department to collect on the insurance policy. Thus, Dugan aided and abetted the scheme to defraud the insurance company.

The question remains, however, whether there was sufficient evidence from which the jury could find that Dugan was aware of the scheme when he made the false statements. Although circumstantial, the evidence suggesting he was informed is compelling. *See United States v. Iafelice,* 978 F.2d 92, 98 (3d Cir.1992) ("It is not unusual that the government will not have direct evidence. Knowledge is often proven by circumstances."); *Lionti v. Lloyd's Ins. Co.,* 709 F.2d 237, 239 (3d Cir.1983) ("Evidence that [defendant] was responsible for the fire was also compelling, although largely circumstantial.").

Four months prior to the fires, the Fire Department took the advice of its insurance agent and increased the insurance coverage on the hall from $120,000 to $500,000. Dugan had heard fellow fireman discuss burning the hall to collect the insurance proceeds. Upon learning that the building was on fire the first time, Dugan deviated from his standard operating procedure of immediately reporting the fire to "911" emergency personnel and instead called Baker, the most vocal proponent of burning the hall. In fact, Dugan delayed calling "911" for nearly ten minutes. Additionally, Dugan was informed by investigators that the fires were caused by arsonists. After the first fire, but before the second, Dugan helped Baker, Booker, and Cooper remove items from the partially-damaged hall. Although Dugan offers a plausible explanation for removing the items, the jury could have inferred from this action that Dugan knew the hall was going to be burned again and therefore wished to save the items.

Any lingering doubts over Dugan's awareness of the scheme are extinguished by his attempt after the first fire to get the insurance company to pay for the already damaged hall floor. This effort to defraud the insurance company, coupled with the abundance of circumstantial evidence that Dugan knew the firemen were involved, clearly evinces Dugan's awareness of the scheme.

When viewing these facts in the light most favorable to the Government, a reasonable jury could have found beyond a reasonable doubt that Dugan was aware of the scheme and acted with the intent to further it. Because the elements necessary for an offense under 18 U.S.C. § 1341 are established, Dugan's conviction will be upheld.

### B. "Minor role" adjustment

Having affirmed Dugan's mail fraud conviction, we turn to the District Court's rejection of Dugan's request to adjust his sentence downward, but defer discussion to subsection C, *infra,* because the issue falls within Dugan's broader challenge to his sentence.

### C. Sentence challenge

Finally, Dugan challenges his sentence under *Booker,* 125 S.Ct. 738. In accordance with this court's determination that the sentencing issues Dugan raises are best determined by the District Court in the first instance, *see United States v. Davis,* 397 F.3d 173, 183 (3d Cir.2005), we vacate the sentence, including the District Court's refusal to adjust the sentence downward, and remand for resentencing in accordance with *Booker.*

### III

For the reasons set forth above, we will affirm the mail fraud conviction. However, we will vacate and remand the judgment of sentence in accordance with *Booker.*