

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2009

# USA v. Fleet Mgmt Ltd

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2600

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Fleet Mgmt Ltd" (2009). *2009 Decisions.* Paper 1293.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1293

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-2600

———————

UNITED STATES OF AMERICA,
                                            Appellant

v.

FLEET MANAGEMENT, LTD.;
PARAG RAJ GREWAL;
YEVGEN DYACHENKO

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Nos. 2-07-cr-00279-001, 2-07-cr-00279-002, 2-07-cr-00279-003)
District Judge: Honorable John R. Padova*

———————

Argued March 23, 2009

Before:  RENDELL, AMBRO, and JORDAN, Circuit Judges

(Filed: May 28, 2009)

———————

_____

    *  This matter comes before the Court as an interlocutory appeal from the District
Court's Memorandum and Order, entered April 29, 2007, denying Defendants' joint
motion *in limine* to exclude expert report and testimony.  The subject order was issued by
Hon. John R. Padova, Senior Judge of the U.S. District Court for the Eastern District of
Pennsylvania, to whom this matter was originally assigned.  The District Court case was
subsequently reassigned to Hon. Harvey Bartle, III, Chief Judge of the U.S. District Court
for the Eastern District of Pennsylvania.

John E. Arbab, Esq.   **[ARGUED]**
John L. Smeltzer, Esq.
U.S. Department of Justice
Environment & Natural Resources Division
P. O. Box 23795
L'Enfant Plaza Station
Washington, DC   29926

Joan E. Burnes, Esq.
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106
   *Counsel for Appellant*

Dennis F. Gleason, Esq.
Carl R. Woodward, III, Esq.   **[ARGUED]**
Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
5 Becker Farm road
Roseland, NJ   007068
*Counsel for Appellee*
   *Yevgen Dyachenko*

Marc R. Greenberg, Esq.   **[ARGUED]**
Joseph A. Walsh, II, Esq.
Keesal, Young & Logan
400 Oceangate
P. O. Box 1730
Long Beach, CA   90801-1730
*Counsel for Appellee*
   *Fleet Management, Ltd.*

Toby K. Mergler, Esq.
W. Bruce Pasfield, Esq.
Alston & Bird
950  F Street, N.W.
Washington, DC    20004
*Counsel for Appellee*
   *Parag Raj Grewal*

RENDELL, Circuit Judge.

The government appeals from the District Court's denial of its motion in limine and resulting exclusion of the expert report and testimony of Marine Science Technician Chief Matthew Jones ("Jones"), proffered to prove that oil-contaminated bilge water and sludge ("oily waste") was discharged from the Valparaiso Star ("the Ship") into the sea in January 2007, violating several federal statutes. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731.

We review the District Court's order for abuse of discretion.[1]

The events surrounding the investigation conducted by Jones, and his extensive testimony at the *Daubert* hearing regarding his experience, activities, reasoning, and conclusions, are well known to the parties and will not be recounted here. Jones opined that the oily waste was discharged into the sea. The District Court excluded Jones's opinion after conducting the *Daubert* hearing, and issued a thorough, 15-page opinion setting forth his basis for excluding Jones's report and opinion. We find the District

---

[1] We apply an abuse of discretion standard when reviewing a district court's decision to admit or exclude expert opinion testimony and its decisions as to how to determine the reliability of that testimony. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999); *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir. 2008).

Court's opinion to be persuasive and correct. We wholeheartedly adopt its reasoning and conclusion and will affirm.

On appeal the government levels two basic attacks on the District Court's reasoning. *First,* it urges that the Court misapplied the "reliability factors" – namely as to Jones' experience and the general acceptance of his methodology; and *second,* it urges that the District Court erred in crediting alternative explanations as to why the oily waste may have been unaccounted for – other than discharge into the sea.

We will not concern ourselves with Jones's expert qualifications, but assume for our purposes that they are acceptable.[2] The real issue before the District Court, and before us, concerns the "reliability" of Jones's opinions, based upon his methodology. *See Daubert v. Merrell Dow Pharms. Inc.,* 609 U.S. 579, 589 (1993).

The government urges that Jones's methodology was that of "reasoning to the best inference," akin to a form of analysis known as "differential diagnosis," as described by our court in *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 758 (3d Cir. 1994)

_____

[2] The District Court did not rule as to Jones's qualifications. Although Jones has conducted over 800 inspections of foreign vessels over seven years, including review of vessel records relating to the proper management of oily wastes, only 10 of these inspections involved potential violation of the International Convention for the Prevention of Pollution From Ships (commonly referred to as "MARPOL," an abbreviation for marine pollution), or the Act to Prevent Pollution from Ships ("APPS"). 33 U.S.C. § 1901 *et seq.* However, qualifications are to be judged according to a "liberal minimum qualification" standard, and we thus assume that Jones was qualified to testify as an expert. *See Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 809 (3d Cir. 1997).

4

("*Paoli II*").  Differential diagnosis is the basic method used in internal medicine and involves:

> the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a *systematic comparison and contrasting of the clinical findings.*

*Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 807 (3d Cir. 1997) (quoting Stedman's Medical Dictionary 428 (25th ed. 1990)) (emphasis added).

As applicable here, reasoning to the best inference would involve the systematic and objective elimination of alternative causes.  Unfortunately for the government, Jones's expert report does not refer at all to alternative causes.   Instead, the report recites what Jones learned upon his inspection and notes that what he saw was "consistent with the allegation that the bilge/ballast pipes were used as a delivery system to discharge bilge directly from the bilge wells into the ocean."  (App. 669-70.)  Nowhere in the report does Jones address other potential causes.

Jones fared no better at the *Daubert* hearing.  During his direct testimony he failed to volunteer any information as to any alternatives that he considered – other than the discharge to a reception facility – let alone as to why he objectively and systematically rejected them.   In response to the direct question on cross-examination as to the basis for his opinion that waste was discharged overbroad while the ship was at sea, he stated:

> A:    Reviewing the oil record book, the tank sounding logs and the bridge log for the location of the vessel and you know, the receipts, too, that there wasn't anything that was discharged to a reception facility.   And then the other thing

> that helped me determine that, too, was I asked questions of the captain and the chief engineer and everything of why the tank levels dropped during those days and they didn't have an explanation for me.

Transcript of motions hearing on January 30, 2008, p. 194. (App. 177.)

The government characterizes Jones's reasoning process as his having "draw[n] an inference from the allegations of Singh and Dhabel . . ." as "the best explanation among possible explanations for what happened to oily waste aboard the Ship on January 14-15, 2007." (Appellant's Br. 39.) However, in his testimony offered in support of the admissibility of his opinion, he was totally silent as to what other explanations he considered, other than discharge at a reception facility. While certain facts might have supported a permissible inference as to discharge, as the government urges, the very hallmark of the methodology relied upon is the elimination of alternative causes. This Jones did not even attempt to do in either his proffered report or his testimony.

The government attempts to undermine the other possible causes identified by the District Court and appellees by arguing that Jones effectively dealt with them and demonstrated that they were not plausible.[3]

---

[3] The government argues that alternative hypotheses should be the basis of cross-examination and their absence should not be a basis for exclusion of the expert opinion. However, if reasonable alternative causes or explanations have not been considered, that necessarily undermines the reliability of the "reasoning by inference" – the very methodology that the government says was followed by Jones.

Accordingly, the existence and viability of other alternatives are important to the admissibility inquiry.

6

As to the possibility that the oily waste was moved to another tank on the ship, Jones relied on what he was told by crew members and examined only the four tanks that the records indicated were used for oily waste and were listed as tanks appropriate for holding oily waste (three of the four tanks were so listed). He did not consider whether the oil might have been transferred to other tanks on board, or explore the allegation of sabotage.

Similarly, as to his failure to consider other possible uses for the hose with oil residue, the government urges that Jones could simply rely on what others told him. Jones testified that:

> A: If someone had told me that when I was asking what the hose was used for and no one could explain what that hose was used for, then I might consider that, but when no one even would admit they had ever even seen the hose before, no, it wouldn't change my opinion.

(Transcript of Testimony of Matthew Jones at *Daubert* hearing, App. 378.)

In its brief, the government contends that "[t]hat explanation makes perfect sense: Chief Jones cannot logically be required to offer a rejoinder when no alternative explanation was tendered at the time of his Port State Control inspection." (Appellant's Br. 47-48.)

However, we believe that an expert's investigation requires inquiry and actual investigation, not a determination based solely on what the expert is told. The District Court's criticism of Jones' failure to consider the length of the hose, or the fittings'

7

match, was not a "quibble," as the government urges; it was an appropriate challenge to his failure to conduct his own investigation rather than rely on what others told him.

The government's argument as to the reasonableness of Jones's explanation for discarding the third possible alternative – that is, as to other ways in which oil "could have infected" the bilge/ballast discharge value – is similarly flawed. Again, it urges that he need not have pursued the theory of sabotage "when the proponent of that theory was unwilling to provide him with even a minimum quantum of supporting evidence." (Appellant's Br. 49, 50.)

We submit that one who accuses his fellow crew members of sabotage may well stop at pointing an investigator in the direction of the real cause. The trained investigator would not be stymied by such silence, but, rather, should be alerted to the need to then conduct an independent investigation. In short, the government's excuse for Jones's failure in this regard is unconvincing.

Simply stated, Jones's reasoning did not rule out other possible causes, or provide "an intelligible response as to why it was not the actual cause." *Hines v. Consol. Rail Corp.,* 926 Fed. 262, 270 n.6 (3d Cir. 1991). Instead, he accepted the cause that was consistent with the what the whistleblower, Gopal Singh, told him. He did not conduct a "differential diagnosis."[4]   Therefore, he failed to follow the reliable methodology that he

---

[4] The Appellees also contest at length the "systematic" nature of Jones's methodology. (Appellees' Br. 35-39.)   We agree that his manner of testing and assessing the evidence was flawed in many ways.  No further discussion is necessary.

8

urges as the basis for the admissibility of his opinion, and his opinion could thus be excluded. The District Court so held, and we agree.[5]

Based on the foregoing, and given the latitude given to the District Court under the abuse of discretion standard, as explicated by the Supreme Court in *Kumho Tire*, we will AFFIRM.

*US v. Fleet Management*, No. 08-2600
JORDAN, *Circuit Judge*, dissenting

I agree with the Majority that Chief Marine Science Technician Matthew Jones did not employ "reasoning to the best inference"[6] or "differential diagnosis" during his January 2007 investigation into whether oily waste was discharged from the Valparaiso Star. I also agree that the admissibility of Jones's expert testimony on the subject turns on its reliability.[7] However, because I believe that Jones proffered reliable opinions,

---

[5] We submit that the nature and reliability of Jones's opinion that the oily waste was discharged into the ocean bears no resemblance to the nature and reliability of an experienced police officer's opinion as to whether certain conduct is consistent with that of drug traffickers. Thus, we disagree with the view of our dissenting colleague.

[6] I do not mean that Jones did not use his experience and sound reasoning in reaching his conclusion, only that he did not necessarily follow a formal, scientific method.

[7] Under Fed. R. Ev. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

(continued...)

despite not employing the methodology that the government later attributed to his investigation, I respectfully dissent.

It is important to keep in mind what Jones brings to this case. He does not purport to be anything more than a law enforcement officer asked to provide opinions concerning a criminal investigation that he undertook. To condition the admissibility of those opinions on the scientific precision of Jones's investigative methodology is contrary to our precedent and to logic.

Our decision in *United States v. Davis*, 397 F.3d 173 (3d Cir. 2005), is instructive. There, two police officers witnessed shots being fired from another vehicle and gave

---

[7](...continued)
>reliable principles and methods, and (3) the witness has applied the
>principles and methods reliably to the facts of the case.

From this Rule, there has been extracted "a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted).

The Supreme Court stated in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), that "[fit] goes primarily to relevance," in that the testimony must "aid the jury in resolving a factual dispute." *Id.* at 591. Because the ultimate issue in this case concerns whether appellees unlawfully discharged oily waste, Jones's testimony regarding whether such discharge occurred is profoundly relevant.

As to the "qualification" prong, we have "eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." *In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("*Paoli II*") (citing *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 652-53 (3d Cir. 1982); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3d Cir. 1979)). The District Court did not question whether Jones satisfied this prong, and, as a formally trained and experienced maritime inspector with seven years of experience and more than 800 vessel inspections under his belt, he surely did. Because, however, "the level of expertise may affect the reliability of the expert's opinion," *Paoli II*, 35 F.3d at 741, the precise nature of Jones's qualifications are relevant to the "reliability" discussion that occupies the remainder of this dissent.

10

chase. *Id.* at 176. Eventually, the vehicle stopped and the four occupants fled. *Id.* at 177.

One of the occupants, Davis, pointed his firearm at an officer, and the officer shot Davis,

who fell to the ground. *Id.* A firearm was recovered from the area where Davis fell, and

money and packets of cocaine base were taken from his person. *Id.* Firearms were either

found on, or linked to, the other occupants, and numerous packets of cocaine base were

discovered in the vehicle. *Id.* At trial, the District Court permitted one of the officers,

Derrick Garner, a fourteen-year veteran of the police force with twelve years of

experience investigating narcotics cases, to provide expert testimony that the actions of

Davis and the other vehicle occupants were consistent with drug trafficking. *Id.* at 177,

179.

Davis contended on appeal that the testimony was inadmissible because there was

no scientific basis for Garner's opinion. *Id.* at 178. We rejected that argument, holding

that, in a case where the proposed expert is a law enforcement officer, instead of a

scientist, questioning the "science" of his method – by asking whether it had been subject

to scientific testing or peer review, whether it had a known or potential rate of error, or

whether it was generally accepted – was a futile exercise. *Id.* Like the Supreme Court,

we "recognized 'that there are many different kinds of experts, and many different kinds

of expertise,'" and that evaluating factors that speak to the scientific precision of a non-

scientist's opinion sheds no light on whether that opinion is reliable. *Id.* (quoting *Kumho

Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). Instead, we were "satisfied that ... he

provided a reliable opinion based on years of experience." *Id.*

11

As applied to the case at hand, *Davis* directs us to assess the reliability of Jones's opinion by reference to his relevant experience, not by asking whether his investigative method fits the ill-advised *post-hoc* label that the government has applied to it. Accordingly, we must examine whether Jones's professional experience qualifies him to render the opinions he proffered. *See, e.g., Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322-23 (3d Cir. 2003) ("An expert may be generally qualified but may lack qualifications to testify outside his area of expertise.").

Jones is a certified Foreign Vessel Inspector, who, as of May 21, 2007, had been inspecting vessels for the U.S. Coast Guard for seven years. During that time, he had conducted more than 800 inspections – inspections that required him to examine equipment and records related to oily waste management. Prior to becoming an investigator, he spent three years working as an engineer on Coast Guard cutters, where he maintained the same sort of equipment that he examined on the Valparaiso Star. He has received formal training as a Marine Science Technician, and he has attained qualifications from the Coast Guard as a Pollution Investigator, a Boarding Officer for foreign vessels, a Hull Inspector, and a Machinery Inspector.

Appellees complain that Jones lacks the usual trappings of a science scholar. Specifically, they say that "[h]e has never published any scholarly or peer[-]reviewed papers on any topic relevant to his testimony," nor does he "possess any formal degrees" or belong to "any professional society or association that purports to have expertise in

12

tank soundings, tank volumes, or marine engineering." (Appellee's Br. at 50.) Such contentions, which ignore the lack of journals and professional societies devoted to Jones's line of work, only reinforce my belief that it is unwise to treat law enforcement officers like scientists when evaluating the reliability of their expert opinions. Besides, we have held many times over that professional experience, in lieu of formal training or education, can serve as the basis for expertise. *See, e.g., Pineda v. Ford Motor Co.*, 520 F.3d 237, 247-49 (3d Cir. 2008); *Davis*, 397 F.3d at 178-79; *Schneider*, 320 F.3d at 405-06 (3d Cir. 2003).

The Majority notes that only ten of the 800 vessel inspections that Jones conducted involved potential violation of the laws that appellees are accused of violating. (Maj. Op. at 4 n.2). While that fact may well bear on the persuasive effect of Jones's opinions, it should not render them inadmissible. As we have said before, "most arguments about an expert's qualifications relate more to the weight to be given the expert's testimony than to its admissibility. Thus, witnesses may be competent to testify as experts even though they may not ... be the 'best' qualified. Who is the 'best' qualified is a matter of weight upon which reasonable jurors may disagree." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996).

By excluding Jones's expert testimony, the District Court took that credibility determination from the fact-finders. While a district court enjoys wide latitude in which to make evidentiary decisions, it "must be careful not to mistake credibility questions for admissibility questions." *Kannankeril v. Terminix Int' Inc.*, 128 F.3d 802, 809 (3d Cir.

13

1997).  To err in that manner, by excluding an expert opinion that meets the minimum standards of admissibility, is an abuse of discretion.  *See id.*  Because I believe that Jones's opinions are sufficiently reliable to be admitted, I would reverse the District Court's ruling.